# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN GREEN,<br><br>        Petitioner,<br><br>    v.<br><br>DANIEL PARAMO, Warden,<br><br>        Respondent. | CASE NO. 1:14-CV-1648-LJO-SMS-HC<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DENIAL OF THE PETITION |

Petitioner is a state prisoner proceeding *pro se* and *in forma pauperis* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Doc. 1. On October 27, 2014, this Court screened the petition and, without addressing the merits, concluded that it was not plain from the allegations that Petitioner is not entitled to relief and directed Respondent to file a response. Doc. 5. Respondent filed an answer addressing the merits of the petition. Doc. 19. Petitioner did not file a traverse. For the following reasons, the Court recommends that the petition be denied.

**I.    BACKGROUND**

On April 18, 1999, Danica Pestich, a 92-year-old woman living in Fresno, California, called her daughter around 1:15 a.m.[1] Her daughter told her to call the police, which she did around 2:57 a.m. Ms. Pestich told the 911 dispatcher that someone she did not know came into her house. She recounted how he had knocked her down, sexually battered her, ejaculated on her foot, and intimidated her against calling the police before he left. Fresno Police Officers Valentino and Valles arrived at her home.

---

[1] This brief factual background is summarized from the California Court of Appeals opinion.

On April 20, 1999, Fresno Police Detective Weiss went to Ms. Pestich's home to interview her. She collected a rug off of a washing machine on the back porch, because Ms. Pestich told her that she had used the rug to wipe the ejaculate off of her leg and then moved it to the back porch. A lab analysis revealed a semen stain on the rug. The stain was sent to the Berkeley Department of Justice laboratory for DNA typing and entry of the DNA profile into the database.

In January 2003, DNA typing was submitted to the database. In March 2003, a "hit" was reported, and Detective Weiss was notified of Petitioner for the first time. Detective Weiss interviewed Petitioner, who said that he had never been to Ms. Pestich's home. Petitioner's blood sample was collected and his DNA profile matched that of the stain. In 1985, in Alameda County, California, Petitioner had been convicted by guilty plea of forcible rape of an elder with personal use of a deadly weapon and personal and intentional infliction of great bodily injury; assault of an elder with intent to commit rape; and false imprisonment of an elder by means of force or violence.

Ms. Pestich passed away before Petitioner's trial. Part of her 911 phone call was admitted into evidence.

On October 21, 2010, after a jury trial in the Superior Court of Fresno County, Petitioner was convicted of all three counts against him: 1) assault with intent to commit rape; 2) sexual battery on a restrained person; and 3) elder abuse, during each of which, he personally inflicted great bodily injury on a person 70 years of age or older. On December 3, 2010, Petitioner was sentenced to a total unstayed prison term of 25 years to life, plus 10 years.

Petitioner pursued a direct appeal of the sentence on the grounds that the trial court violated his constitutional right to confront witnesses by allowing Ms. Pestich's statement to the 911 dispatcher into evidence, and that he was denied effective assistance of counsel when his trial attorney "opened the door" to previously excluded evidence." On June 6, 2013, the California Court of Appeals affirmed the judgment, and, on September 11, 2013 the California Supreme Court denied review.

Petitioner filed the pending federal petition for habeas corpus on October 22, 2014. Petitioner re-alleges the arguments made in his direct appeal.

## II. STANDARD OF REVIEW

Habeas corpus is neither a substitute for a direct appeal nor a device for federal review of the merits of a guilty verdict rendered in state court. *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979) (Stevens, J., concurring). Habeas corpus relief is intended to address only "extreme malfunctions" in state criminal justice proceedings. *Id.* Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment, a petitioner can prevail only if he can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Lockyer v. Andrade*, 538 U.S. 63, 70-71 (2003); *Williams v. Taylor*, 529 U.S. 362, 413 (2000). "By its terms, § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions set forth in §§ 2254(d)(1) and (d)(2)." *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

The AEDPA standard is difficult to satisfy since even a strong case for relief does not demonstrate that the state court's determination was unreasonable. *Harrington*, 562 U.S. at 102. "A federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Lockyer*, 538 U.S. at 75-76. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (*quoting Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Put another way, a federal court may grant habeas relief only when the state court's application of Supreme Court precedent was objectively unreasonable and no fair-minded jurist could disagree that the state court's decision conflicted with Supreme Court's precedent. *Williams*, 529 U.S. at 411.

## III. CONFRONTATION CLAUSE

Petitioner argues that his constitutional right to confront witnesses was violated when the

3

trial court allowed Ms. Pestich's statement made to a 911 dispatcher into evidence, even though Ms. Pestich had passed away, and Petitioner did not have the opportunity to cross-examine her. The California Court of Appeal found that Ms. Pestich's statement was not testimonial in nature, because its primary purpose was to meet an ongoing emergency, and, even if the statement should have been excluded, admission was harmless error because it did not have a substantial injurious effect on the verdict.

A. Applicable Law

The Sixth Amendment's Confrontation clause bars the government from introducing testimonial statements of witnesses absent from trial unless the declarant is unavailable and the defendant has had a prior opportunity to cross-examine. U.S. Const., Amend. VI; *Crawford v. Washington*, 541 U.S. 36, 59 (2004).

Nontestimonial statements do not implicate the Confrontation Clause. *Moses v. Payne*, 555 F.3d 742, 754 (9th Cir. 2009) (*citing Whorton v. Bockting*, 549 U.S. 406 (2007)). "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Davis v. Washington*, 547 U.S. 813, 822 (2006). "They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Id.*; *and see United States v. Brooks*, 772 F.3d 1161, 1169 (9th Cir. 2014).

"[T]he existence of an 'ongoing emergency' at the time of an encounter between an individual and the police is among the most important circumstances informing the 'primary purpose' of an interrogation." *Michigan v. Bryant*, 562 U.S. 344, 131 S. Ct. 1143, 1156 (2011) (*citing Davis*, 547 U.S. at 826). "If the information the parties knew at the time of the encounter would lead a reasonable person to believe that there was an [ongoing] emergency, even if that belief was later proved incorrect, that is sufficient for purposes of the Confrontation Clause." *Id.* at 1157, note 8.

In *Davis v. Washington*, the Supreme Court concluded that primary purpose of a specific 911 call was to enable police assistance to meet an ongoing emergency because the speaker

described events that were actually happening, she was facing an ongoing emergency, the nature of the questions and answers elicited statements necessary to resolve the present emergency, and the speaker was frantic and in a not tranquil environment. *Davis*, 547 U.S. at 827-28. Hence, she was not acting as a "witness," and she was not "testifying." *Id*. at 828.

B.  Discussion

The California Court of Appeal concluded, according to California Supreme Court interpretation of the Confrontation Clause post *Michigan v. Bryant*, that an objective assessment of Ms. Pestich's communication with the 911 dispatcher demonstrates that the primary purpose was to meet an ongoing emergency. The appeals court acknowledged Petitioner's argument that the communication occurred after Petitioner had left Ms. Pestich's home, the attack was over, and Ms. Pestich had already telephoned her daughter. However, Ms. Pestich told the dispatcher that she had been attacked, her assailant warned her against calling the police, he indicated that he was going across the street, and she worried he would return. She said she had been knocked down and was bleeding, and she was not sure if she needed an ambulance. The appeals court concluded that a reasonable person would have believed that the emergency had not ended, whether or not it actually had.

In addition, the appeals court found that the questions from the dispatcher and Ms. Pestich's answers elicited statements necessary to resolve the present emergency. The dispatcher tried to get a description of the assailant, determine his whereabouts, and the nature of the threat he posed. The circumstances of the communication were chaotic. Ms. Pestich was distraught and very fearful.

A review of the 911 phone call reveals that the California Court of Appeal's determination that the Ms. Pestich's statement to the 911 dispatcher was nontestimonial was not based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding because the circumstances objectively indicated that the primary purpose of dispatcher's line of questioning was to enable police to respond to an ongoing emergency. The transcript reveals that Ms. Pestich was distraught, wailed and exclaimed, and was fearful that her assailant would return. She told the dispatcher she was afraid that her assailant would return if she

called the police, and she was, in fact, on the phone with a law enforcement official. She believed that the emergency was ongoing, and the dispatcher could also reasonably believe that the emergency was ongoing. The dispatcher gathered information from Ms. Pestich in order to resolve the emergency. The trial court concluded that the communication with the 911 dispatcher ceased to be nontestimonial when the police arrived at Ms. Pestich's home, and the recorded communication began to be more investigative in order to establish or prove what had occurred, which would be potentially relevant to later criminal prosecution.

Ms. Pestich's communication with the dispatcher is therefore very similar to the 911 phone call made in *Davis* and is not testimonial such that it would implicate the Confrontation Clause. The Court of Appeal's determination was not contrary to, nor did it involve an unreasonable application of, clearly established federal law. Therefore, the petition should be denied on this ground.

### C.  Related Hearsay Argument

Petitioner also argues that his constitutional right to confront witnesses was violated when the trial court admitted the 911 call because it was impermissible hearsay under the California rules of evidence and did not fall under the spontaneous statement exception. This inquiry does not raise a federal question and is not appropriate for habeas review.

An application for a writ of habeas corpus in a federal district court by a person in custody under a judgment of a state court is only available to address violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

Also, Petitioner has not demonstrated that the state court application of the California Evidence Code was erroneous, arbitrary, or capricious, or that it rendered his trial fundamentally unfair in violation of the Due Process Clause. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). Thus, whether Ms. Pestich's 911 call was inadmissible hearsay pursuant to California Evidence Code is not a question properly before this court.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner argues that his constitutional right to effective assistance of counsel was violated because his trial attorney succeeded in blocking Ms. Pestich's statement to Detective Weiss but then questioned her if the victim advised her as to whether or not the rug had been used to wipe semen from her leg. Petitioner argues that this was ineffective assistance of counsel because there was no strategic reason to elicit the harmful evidence, which was the only evidence that connected Petitioner to Ms. Pestich's assailant. The Court of Appeal reasoned that Petitioner's trial counsel made a reasonable tactical choice in the midst of trial, and that Petitioner had not demonstrated prejudice.

### A. Applicable Law

A habeas claim alleging appellate counsel was ineffective is evaluated under *Strickland v. Washington*, 466 U.S. 668, (1984). *See Williams v. Taylor*, 529 U.S. 362, 390-91 (2000). To establish ineffective assistance of counsel, petitioner must prove: (1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687-94, 697. The relevant inquiry is not what counsel could have done; rather, it is whether the choices made by counsel were reasonable. *Babbitt v. Calderon*, 151 F.3d 1170, 1173 (9th Cir.1998).

Habeas relief for ineffective assistance of counsel may only be granted if the state-court decision unreasonably applied the *Strickland* standard. *Knowles v. Mirzayance*, 556 U.S. 111, 129 S.Ct. 1411, 1419 (2009).

### B. Analysis

Here, the Court of Appeal reasoned that Petitioner's trial counsel may have altered his strategy as the testimony proceeded. The record on appeal did not shed light on why trial counsel acted as he did, nor did it preclude the possibility of satisfactory explanation on direct appeal. The Court of Appeal also considered Petitioner's prejudice argument –that the DNA evidence on the rug was insufficient to show that he was Ms. Pestich's assailant. Petitioner argued to the Court of Appeal that a jury, without Ms. Pestich's statement to Detective Weiss, could have inferred that

Petitioner's DNA got on the rug some other way, and that Ms. Pestich found the rug and brought it inside, or that Petitioner came into Ms. Pestich's home while she was away and masturbated on the rug. The Court of Appeal found those scenarios "speculative in the extreme" and that jurors would have much more likely inferred that Detective Weiss seized the rug because of something Ms. Pestich told her during her interview, or on the off chance it might contain evidence.

Petitioner's trial counsel does not appear to have fallen below an objective standard of reasonableness under prevailing professional norms, but the appeals court reasonably found that there was not enough evidence in the record on appeal to make that determination. Nonetheless, the Court of Appeal's determination that Petitioner did not establish prejudice was not based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding, and the decision was not contrary to, nor did it involve an unreasonable application of, clearly established Federal law. There is not a reasonable probability that exclusion of Ms. Pestich's statement to Detective Weiss regarding using the rug to wipe the semen from her leg, would have resulted in a different outcome. It is not reasonably probable that a jury, without knowing the reason why Detective Weiss collected the rug, would infer either of Petitioner's alternate theories as to how his DNA appeared on a rug found in Ms. Pestich's home. Without demonstrating a reasonable likelihood of prejudice, Petitioner cannot succeed on the ground of ineffective assistance of counsel. The Court of Appeal did not unreasonably apply the *Strickland* test. Hence, the petition should be denied on this ground.

**V.    APPEALABILITY**

For the reasons set forth above, Petitioner has not shown "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right [or] that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Hence, the Court should decline to issue a certificate of appealability.

\\\
\\\
\\\

## VI. RECOMMENDATION

Based on the foregoing, it is RECOMMENDED that:

1. The petition for writ of habeas corpus be DENIED;

2. Judgment be ENTERED for Respondent; and

3. The Court DECLINE to issue a certificate of appealability.

These findings and recommendations are submitted to the Honorable Lawrence J. O'Neill, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, Petitioner may file written objections with the Court, serving a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: 4/23/2015                         /s/ SANDRA M. SNYDER
                                         UNITED STATES MAGISTRATE JUDGE